**JESSE ORTIZ, SBN 176450**
**ORTIZ LAW GROUP, PC**
681 W. CAPITOL AVE., SUITE 201
WEST SACRAMENTO, CA 95605
Tel: (916) 443-9500
Fax: (916) 443-9501

Attorney for Defendant, Cary Lee Peterson

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> CARY LEE PETERSON, <br><br> Defendant. | Case No.: 22-cr-0338-BLF <br><br> MOTION TO REVOKE DETENTION ORDER AND FOR PRETRIAL RELEASE |

  Defendant Cary Lee Peterson ("Peterson"), by and through his undersigned attorney, respectfully moves the Court, pursuant to 18 U.S.C. §§ 3142 (e) 3145(b), and Federal Rules of Criminal Procedure, Rule 32.1 (a)(6) to revoke the Magistrate Judge's order of detention dated September 23, 2022, and issue an order authorizing pretrial release with orders that Peterson not be employed as Tribal Justice or Tribal Counsel for the Costanoan-Chualar Tribal Community of Indian Canyon ("Tribal Government"), and/or any other conditions deemed appropriate by the Court. Mr. Peterson is not a flight risk. Mr. Peterson is not a risk of danger to his community. Orders prohibiting Mr. Peterson from acting as Tribal Justice and/or Tribal Counsel with other

strict conditions of release, will reasonably assure Mr. Peterson's future appearances before this Court as well as the safety of other persons and the community.

I. PROCEDURAL HISTORY

On December 20, 2018, Peterson was sentenced to 52 months of imprisonment for the following offenses:

1) Count One (1): False Certification, 18 U.S.C. § 1350
2) Count Two (2): False Certification, 18 U.S.C. § 1350
3) Count Three (3): Securities Fraud, 15 U.S.C. §§ 78j(b), 78ff; and 17 CFR § 240.10b5.

Peterson was additionally ordered to make restitution in the amount of $205,167.22. Peterson was ordered to pay monthly installments no less than $250.00 to commence 60 days after release from confinement.

Peterson voluntarily surrendered himself to the Monmouth County Jail to serve the 52 months of imprisonment. Upon completion of the 52 months of imprisonment, Peterson would be on supervised release for a term of 3 years. The special conditions of release included alcohol restriction, testing, and treatment; full disclosure of financial records; mental health treatment; new debt restrictions; self-employment/business disclosure; and exclusion of being involved in the financial investment industry.

On December 23, 2021, Peterson commenced his term of supervised release. On August 23, 2021, Peterson filed a Motion to Vacate the previous sentence of December 20, 2018, which is currently pending. On August 20, 2022, the USDC of New Jersey transferred jurisdiction of the above-entitled matter to the USDC of California, Northern District. On September 07, 2022, the USDC of California, Northern District accepted and assumed jurisdiction of the above-entitled matter.

On or around September 16, 2022, the United States Probation Officer ("USPO") filed a Petition for Warrant for Person Under Supervised Release ("Petition") seeking a no bail warrant for the arrest of Peterson. In summary, the Petition alleges the following violations:

1) Charge One (1), violation of standard condition number five (5): Notifying USPO at least 10 days prior to change of residential address or living arrangement.
2) Charge Two (2), violation of standard condition number seven (7): Notifying USPO at least 10 days prior to change of employment.
3) Charge Three (3), violation of standard condition number nine (9): Notifying USPO within 72 hours of arrest or being questioned by law enforcement officer.
4) Charge Four (4), violation of mandatory condition: To pay no less than monthly installments of $250 of imposed restitution within 60 days after release from confinement.
5) Charge Five (5), violation of special condition number two (2): Full disclosure of financial records.
6) Charge Six (6), violation of standard condition number thirteen (13): Follow instructions of the USPO related to conditions of supervision.
7) Charge Seven (7), violation of mandatory condition number three (3): Not commit another federal, state, or local crime.
8) Charge Eight (8), violation of special condition number four (4): prohibition from incurring any new credit charges, opening additional lines of credit, or incurring any new monetary loans, obligations, or debt, by whatever name known, without approval of the USPO.
9) Charge Nine (9), violation of mandatory condition number three (3): not commit another federal, state, or local crime.

(Hereinafter collectively "Charges")

On September 22, 2022, Peterson was brought before Magistrate Judge Nathanael

Cousins. Peterson was advised by the Court of his rights and charges pending. The US Attorney and USPO moved for detention of Peterson pending the charges. The matter was continued to September 23, 2022, in order to allow retained counsel Jesse Ortiz, Ortiz Law Group, P.C. to appear.

On September 23, 2022, arguments were made regarding detention and supervised release. On September 23, 2022, Northern District of California Magistrate Judge Nathanael M. Cousins issued an order granting the government's motion for detention.[1] The Court set a preliminary hearing for October 05, 2022, at 1:30 pm in San Jose. The Preliminary Hearing was thereafter continued due to unavailability of the government, counsel for Mr. Peterson and the USPO from October 05, 2022, to October 24, 2022 at 1:30 pm in San Jose, Courtroom 5, 4th floor.

## II. DISCUSSION

Peterson seeks revocation of the detention order issued by Magistrate Judge Cousins. "If a person is ordered detained by a magistrate judge…the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). In reviewing magistrate's detention order, pursuant to 18 U.S.C. § 3145(b), the District Court will exercise de novo standard of review held appropriate under predecessor statute. *United States v. Moore*, 607 F. Supp. 489, 1985 U.S. Dist. (N.D. Cal. 1985).

In the instant matter, the government has not established a showing that Peterson is a flight risk nor that he poses a danger to any other person or the community. In fact, Peterson has established by clear and convincing evidence that he will not flee and that he does not pose a danger to any other person or the community.

---

[1] Magistrate Judge Nathanael M. Cousins found that… "the serious violations alleged here involving fraud and abuse of power; the weight of evidence; the assertion of deception and lack of truthfulness by Peterson; and the documents (exhibits filed at ECF 6) evidencing Peterson's violations, lead the Court to conclude that no combination of conditions may presently be imposed that would mitigate the risks of non-appearance and danger to the community. Consequently, the Court orders the defendant Peterson to be detained."

**A. The Government Cannot Prove by a Preponderance of the Evidence that Peterson Poses a Serious Risk of Flight.**

There is no serious risk that Peterson will flee if released. The Government has not provided any specific indications of risk to flight. The main argument by the government is that in the past Peterson has traveled internationally.[2] The government does not provide any specific detailed allegations which show any type of flight risk. Accordingly, the Court cannot detain Peterson for being a flight risk. In the detention order by Magistrate Judge Cousins, the Court determined Peterson was a flight risk, but did not state why or how.

On a motion for pretrial detention, the government bears the burden of showing by a preponderance of evidence that the defendant poses a flight risk. *United States v. Gebro* 948 F.2d 1118, 1121 (9th Cir. 1991). The government did not meet this burden.

**B. The Government Cannot Prove by Clear and Convincing Evidence that Peterson presents an Identified and Articulable Threat to an Individual or the Community.**

To justify detention based on dangerousness, the government must prove by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person in the community. (18 U.S.C. § 3142(f)) In assessing whether Peterson must be detained on the basis of dangerousness, the Court considers the following factors: "(1) the nature and circumstances of the offense charged…; (2) the weight of the evidence against the person; (3) the history and characteristics of the person…; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." (18 U.S.C. § 3142(g)) On balance, weighing these factors against the backdrop and notion that in our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception, Mr. Peterson does not pose a concrete prosecution threat to public

---

[2] International flight by Peterson was previous to his supervised release.

safety. Conditions preventing Peterson from serving Tribal Counsel or Tribal Chief Justice for the Tribal Government would eliminate any concerns for community safety.

### 1. Nature and circumstances of the offenses Charged.

### i. Allegations relating to Peterson being appointed as Chief Justice of the Costanoan-Chular Indian Tribal Community of Indian Canyon (Charge 9)

In determining whether to grant release to Peterson, the Court indicated that the exhibits presented by the government was evidence that there was an "abuse of power" that occurred. (ECF 10, 09/23/2022 Tx, pg. 29, lines 7 through 9) (Referencing ECF 6)[3] The Court further detailed that the alleged abuse of power stemmed from "evicting people" under the authority of the law.

The government takes the position as to Charge nine (9) in detail as follows: "…Mr. Peterson, acting on behalf of certain individuals that may or may not believe they are an Indian Tribe, filed a lawsuit in Federal Court.[4] Judge Davila issued an order dismissing the complaint on its face, without even a Defendant hearing. That order…indicated that at least one of the causes of action not only failed to state a claim but maybe was more appropriate in State Court or any Tribal Court. And I think the issue there is that dismissal and that rejection of federal jurisdiction [(ECF 6, Exhibit C)] and the way it was worded was grabbed onto by Mr. Peterson and turned into an affirmative assertion that a Tribal Court does exist and that he is the chief justice of that Court or some judicial officiant, and then from there, he has utilized that to issue orders [(ECF, Exhibit D)] and other false documents which you might say, your Honor, is just a bunch of paper, but ultimately then tried to enforce those documents, including by trying to physically restrain and evict purportedly an individual, and that's extremely troubling because

---
[3] The Court focused primarily on charge number 9.
[4] Peterson did not file a lawsuit in Federal Court case no. 5:22-cv-03092-EJD as alleged by the government. The case was initiated by Honorable Tribal Chairwoman Kanyon Sayers-Roods of the Costanoan-Chualar Indians of Indian Canyon (aka Kanyon Sayers-Roods)(See ECF 6, Exhibit C).

you can make all kinds of paper, but ultimately, once you start using that to effect innocent individuals, that is a huge risk.

And I will restate there is no indication that there's any Tribal Court of this Court. I've not seen a single document establishing this Tribal Court for which Mr. Peterson claims to be the chief justice. And this violation puts the community at risk." (ECF 10, Tx pg. 5, line 22 through pg. 6, line 22).

There has been no evidence presented by the government that Peterson did not have the legal authority to sit as the Chief Justice of the Court for the Tribal Government when making orders for the Tribal Government (ECF 6, Exhibit A). Moreover, there is no evidence presented by the government that Peterson was not appointed by the Tribal Government to serve as the Chief Justice for the Tribal Government. Additionally, there was no evidence presented by the Government that the Tribal Government does not exist. There was only an assertion that the government has "…not seen a single document establishing the Tribal Court for which Mr. Peterson claims to be the chief justice." (ECF 10, Tx pg. 6). There are no facts or evidence presented in support of the governments allegations that Peterson was not appointed or otherwise selected by the Tribal Government to serve as the Chief Justice for the Tribal Government.

The government stated that Peterson somehow "grabbed" (ECF 10, Tx, Pg. 6, line 7) at the language of the Civil Court's order regarding federal jurisdiction (ECF 6, Exhibit C) and that the order created an "assertion that a Tribal Court does exist" (ECF 10, Tx, Pg. 6, line 8). The government appears to allege that Peterson was working under the belief that the Civil Court's order acknowledged or otherwise created the Tribal Court within the Tribal Government. By the governments own argument, it would appear it is acknowledging no intent on the part of Peterson to commit an "Abuse of Power", but rather Peterson held a true belief that he was Chief Justice for the Tribal Government.

In fact, once the Tribal Government received the Civil Court's order (ECF 6, Exhibit C), the Tribal Government (not Peterson) created this council. The Tribal Government assigned Peterson to Chief Justice. Peterson had a good faith belief that the Civil Court acknowledged the existence of the Tribal Government, which gave the Tribal Government the power to create the

council and further to create the position of Chief Justice and counsel that was assigned to Peterson by the Tribal Government. (ECF 10, Tx pg. 26, lines 3 through 19)

Furthermore, there were two orders issued by the Northern District of California in case number 5:22-CV-03092-EJD ("Civil Court") naming the Tribal Government. The Civil Court determined after receiving documentation from Plaintiff Kanyon Sayers-Roods that the Tribal Government was the appropriate jurisdiction to address the claims brought before the Tribal Government by Plaintiff Kanyon Sayers-Roods. As such, the Civil Court dismissed the matter.

Peterson was arrested on September 15, 2022, by San Benito County Sheriff's Office. San Benito County District Attorney elected to not proceed with charges against Peterson and he was released to the Marshall for a hold relating to the above-entitled matter.

### ii. Allegations in counts 1 through 8 do not result in Peterson being Identified and Articulable Threat to an Individual or the Community

While the allegations in counts one (1) through eight (8) are going to be addressed throughout the proceedings, they do not result in Peterson being a threat to an Individual or the Community. The allegations do not contain any threats of violence, financial investments, fraud, or taking by Peterson.

**Counts one (1) & two (2):** Peterson provided an email to the USPO on August 08, 2022, wherein he disclosed to the USPO where he was living and his place of employment.

**Count three (3):** The only law enforcement contacts with Peterson resulted from Peterson contacting law enforcement and did not fall within the condition of his release. Peterson was not required to notify his USPO. On August 14, 2022, Peterson contacted law enforcement to conduct a welfare-check investigation for his son who has special needs. On April 23, 2022, Peterson made a police report because his ex-wife broke into a house and assaulted one of Peterson's guests. On July 15, 2022, Peterson again contacted law enforcement and reported what he believed to be someone stalking him.

**Count four (4):** Peterson was ordered to pay $203,540.19 in restitution, payable at $250.00 per month and he has paid that. $2,600.00 of Peterson's person funds were taken by way of Internal Revenue Service levy, satisfying the monthly payment requirements.

**Counts five (5), six (6), & seven (7):** Peterson has taken great strides to comply with his terms of supervised release regarding financial disclosures. Regarding disclosures made by Peterson, he has provided voluminous records to the USPO. Peterson was in no way attempting to avoid disclosing any financial documentation to the USPO. Peterson made it clear to the USPO that he provided all documentation in his possession and that if he didn't provide documentation requested, it is because he either has no access to said documentation, or it does not exist. Peterson previously retained counsel (Jesse Ortiz) to work with the USPO in order to cure deficiencies, if any, in the financial disclosures made to the USPO. Peterson was not trying to hide anything from the USPO. There is no basis to allege that the disclosures previously provided by Peterson to the USPO are fraudulent in any way.

**Count eight (8):** The government has alleged that Peterson has opened two new credit accounts. This first being a federal loan, and the second a credit card with merit Bank. The federal loan was to complete a consolidation of prior student loans. This was not a new loan or a line of credit. The second was a secured card through Merit Bank. A secured credit card does not operate as a line of credit, but merely allowed Mr. Peterson to use for payments the deposit placed by Mr. Peterson onto the card.

The government has further alleged that based on a credit report, Peterson has applied for other credit lines. There are no conditions preventing Peterson from applying for credit. Applying for credit and opening a line of credit are two completely different things.

There is no threat or risk of threat to the community alleged in counts 1 through 8.

### III. CONCLUSION

For the foregoing reasons, defendant Cary Lee Peterson, respectfully requests the

Court grant the instant motion, revoke the Magistrate Court's order of detention, and issue an order for pretrial release.

DATED: October 18, 2022

/s/ Jesse Ortiz
_____
Jesse Ortiz, Attorney for Defendant
Cary Lee Peterson