# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARY LEE PETERSON,<br><br>Defendant. | Case No. 22-cr-00338-BLF-1<br><br>**ORDER DENYING DEFENDANT'S MOTION TO REVOKE DETENTION ORDER**<br><br>[Re: ECF 20] |

On September 19, 2022, this Court issued a no bail arrest warrant for Defendant Cary Lee Peterson ("Peterson") based on nine charged violations of his conditions of supervised release. *See* Form 12, ECF 3. Peterson was brought before Magistrate Judge Nathanael M. Cousins for a detention hearing on September 23, 2022. *See* Minute Entry, ECF 5. On the same date, Judge Cousins issued a written order directing that Peterson be detained. *See* Detention Order, ECF 7.

Peterson moves to revoke Judge Cousins' detention order and for release pending disposition of the charged supervised release violations. *See* Mot., ECF 20. The motion is opposed by Plaintiff United States of America ("the Government") and the U.S. Probation Office ("Probation"). While neither the Government nor Probation filed a written response to Peterson's motion to revoke the detention order, both offered vigorous oral opposition at the hearing conducted by this Court on November 15, 2022.

For the reasons discussed below, Peterson's motion to revoke Judge Cousins' detention order is DENIED.

## I. BACKGROUND

*Peterson's Conviction and Sentence for False Certification and Securities Fraud*

On December 20, 2018, Peterson was sentenced in the District of New Jersey to 52 months of imprisonment and 3 years of supervised release for the following offenses: Count 1, False Certification in violation of 18 U.S.C. § 1350; Count 2, False Certification in violation of 18 U.S.C. § 1350; and Count 3, Securities Fraud in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 CFR § 240.10b5. *See* Form 12 at 1. Peterson also was ordered to pay restitution in excess of $200,000. *See id.* at 3. Peterson commenced his term of supervised release on December 23, 2021. *See id.* On September 7, 2022, jurisdiction was transferred from the District of New Jersey to the Northern District of California. *See id.* at 1.

*Peterson's Arrest by San Benito County Sheriff's Office*

On September 15, 2022, Peterson was arrested by the San Benito County Sheriff's Office ("Sheriff's Office") for felony offenses under four sections of the California Penal Code: § 115(a), Filing False or Forged Documents; § 470(c), Forgery; § 472, Forgery of Seals; and § 532(a), Theft by False Pretenses. *See* Gov't's Prelim. Hrg. Exhibits, Ex. 8 (Sheriff's Office Reports), Ex. 9 (Arrest Warrant), ECF 35.

The arrest stemmed from Peterson's allegedly fraudulent conduct in declaring himself to be the Chief Justice of the Tribal Court of the Costanoan-Chualar Indian Tribe. *See* Gov't's Prelim. Hrg. Exhibits, Ex. 8 (Sheriff's Office Reports), Ex. 9 (Arrest Warrant), ECF 35. Peterson used his purported authority as the Chief Justice to enlist the aid of the Sheriff's Office in evicting an individual named Marlene Machado from a mobile home that Peterson claimed was on Tribal land. *See id.* Peterson, accompanied by Sheriff's deputies, confronted Machado at the mobile home and gave her fifteen minutes to gather her belongings and vacate the premises. *See id.* Peterson stated that if necessary, he would remove Machado by force. *See id.* Peterson thereafter hired armed security guards for the property who reportedly followed and harassed Machado when she returned to the property. *See id.*

The Sheriff's Office determined that the Costanoan-Chualar Indian Tribe is not a federally recognized tribe; the Tribal Court of which Peterson declared himself Chief Justice does not exist;

2

the land in question is not an Indian Reservation; and Peterson was acting without authority when he evicted Machado. *See* Gov't's Prelim. Hrg. Exhibits, Ex. 8 (Sheriff's Office Reports), Ex. 9 (Arrest Warrant), ECF 35. The Sheriff's Office also determined that Peterson used documents filed in a civil case pending in this District to imbue his conduct with the appearance of legitimacy. *See id*. The warrant for Peterson's arrest issued on August 19, 2022. *See id.*

*Current Form 12*

On September 16, 2022, Probation filed a Petition for Warrant for Person Under Supervision ("Form 12"), which was granted by this Court on September 19, 2022. *See* Form 12, ECF 3. The Form 12 charges Peterson with violating nine conditions of his supervised release: standard condition number 5 that Peterson notify his probation officer at least 10 days prior to a change of residence (Charge 1); standard condition number 7 that Peterson notify his probation officer at least 10 days prior to a change of employment (Charge 2); standard condition number 9 that Peterson notify his probation officer within 72 hours of being arrested or questioned by a law enforcement officer (Charge 3); the mandatory condition requiring Peterson to pay the imposed restitution in monthly installments of no less than $250 (Charge 4); special condition number 2 that Peterson provide Probation with full disclosure of his financial records (Charge 5); standard condition number 13 that Peterson follow the instructions of his probation officer related to conditions of supervision (Charge 6); mandatory condition number 3 that Peterson not commit another federal, state, or local crime (Charge 7); special condition number 4 that Peterson is prohibited from incurring new credit charges, loans, or debt (Charge 8); and mandatory condition number 3 that Peterson not commit another federal, state, or local crime (Charge 9). *See id.* Charge 9 arose from the conduct leading to Peterson's arrest by the Sheriff's Office, discussed above. *See id.*

*Detention Order*

Peterson made his initial appearance before Judge Cousins on September 22, 2022, at which time the Government made an oral motion for detention. *See* Minute Entry, ECF 4; Hrg. Tr. 16:20-24, ECF 9. Judge Cousins held a detention hearing on September 23, 2022. *See* Minute Entry, ECF 5. At the close of the hearing, Judge Cousins directed that several documents

3

referenced by the parties be filed as exhibits. *See* Hrg. Tr. 28:2-22, ECF 10; Exhibits A-D, ECF 6. Those exhibits include an "(Amended) Order of Restraint . . . & Issuance of Arrest Warrant," signed by Peterson as "Chief Justice of Tribal Court," that purportedly enjoins Machado from entering the disputed property; decrees that Machado and anyone acting in concert with her shall be fined $5,000 each time Machado is caught trespassing; and authorizes Tribal Police to use force to detain Machado or any person acting in concert with her. *See* Exhibits A-D, ECF 6. Judge Cousins found the exhibits to be "concerning evidence that there's been an abuse of power." Hrg. Tr. 29:8-9, ECF 10. Judge Cousins found that Peterson had not met his burden to establish by clear and convincing evidence that he will not flee or pose a danger to the community. *See* Detention Order, ECF 7. Judge Cousins ordered that Peterson be detained. *See id.*

*Preliminary Hearing*

Judge Cousins conducted a preliminary hearing on the charged supervised release violations on October 24, 2022, October 27, 2022, and October 28, 2022. *See* Minute Entry, ECF 24; Minute Entry, ECF 30; Minute Entry, ECF 34. At Judge Cousins' direction, the Government filed additional exhibits following that hearing. *See* Gov't's Prelim. Hrg. Exhibits, ECF 35. Judge Cousins found that probable cause was demonstrated with respect to the charged supervised release violations. *See* Minute Entry, ECF 34.

*Current Motion to Revoke Detention*

During the pendency of the proceedings before Judge Cousins, Peterson filed a motion to revoke Judge Cousins' detention order. *See* Mot., ECF 20. That motion was heard by this Court on November 15, 2022. *See* Minute Entry, ECF 40.

## II. LEGAL STANDARD

"A person held in custody for violating probation or supervised release must be taken without unnecessary delay before a magistrate judge." Fed. R. Crim. P. 32.1(a)(1). "The magistrate judge may release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings." Fed. R. Crim. P. 32.1(a)(6). Under § 3143(a)(1), the person must "be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C.

§ 3143(a)(1). "The burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the person." Fed. R. Crim. P. 32.1(a)(1).

"If a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). Under this provision, the district court reviews the magistrate judge's detention order de novo. *See United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990). "[T]he district court is to make its own 'de novo' determination of facts, whether different from or an adoption of the findings of the magistrate," and "the ultimate determination of the propriety of detention is also to be decided without deference to the magistrate's ultimate conclusion." *Id*. at 1193.

### III.   DISCUSSION

Peterson moves to revoke Judge Cousins' detention order and for release pending disposition of the charged supervised release violations. The motion is opposed by the Government and Probation.

Under the above legal standard, Peterson must be detained unless he establishes by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released. The Court emphasizes that the burden is on Peterson to make the requisite showing. *See* Fed. R. Crim. P. 32.1(a)(1) ("The burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the person."). Thus, Peterson's arguments that the Government has not presented evidence supporting detention are misplaced. *See* Mot. at 5-7, ECF 20.

The Court first takes up Peterson's showing that he would not pose a danger if released, and then it takes up Peterson's showing that he would not be a flight risk.

*Danger to the Safety of Any Other Person or the Community*

The Sheriff's Office reports make clear that Peterson evicted Machado from her residence without notice and under threat of force. *See* Gov't's Prelim. Hrg. Exhibits, Ex. 8 (Sheriff's Office Reports), ECF 35. He hired armed guards for the property. *See id.* Machado told Sheriff's

1    Office personnel that Peterson's armed guards followed and harassed her when she returned to the
2    property, and made her feel uneasy because they had guns.  *See id.*  Peterson issued an
3    "(Amended) Order of Restraint . . . & Issuance of Arrest Warrant," signed by him as "Chief
4    Justice of Tribal Court," that authorizes Tribal Police to use force against Machado or any person
5    acting in concert with her should Machado return to the disputed property.  *See* Exhibits A-D,
6    ECF 6.  That document also purports to impose a $5,000 fine against Machado or anyone acting in
7    concert with her each time Machado is caught trespassing on the disputed property.  *See id.*

       Peterson argues that the Government has not proved that he did not have the legal authority to take the actions he did.  The Government has no obligation to prove anything in these detention proceedings – the burden is on Peterson to establish that detention is not warranted.  Peterson has not submitted any evidence that he had the legal authority to evict Machado from her residence, use armed guards to prevent her from returning to the property, or authorize the use of force and imposition of fines against Machado and anyone acting in concert with her.  It is entirely unclear whether the Costanoan-Chualar Indian Tribe is a federally recognized tribe, whether the Tribal Court of which Peterson has declared himself Chief Justice exists as a legitimate tribal body, or whether the land from which Peterson evicted Machado is Indian land or privately owned land.

       Peterson argues that the Tribal Government of the Costanoan-Chualar Indian Tribe has been recognized by another judge in this district as having authority over the property dispute involving Machado.  *See Sayers-Roods v. Machado*, 22-cv-03092-EJD.  The Court has reviewed the orders in that case, and finds that Peterson grossly mischaracterizes them.  The orders do not make any findings as to the legitimacy of the Costanoan-Chualar Indian Tribe, the existence or authority of its Tribal Government, or Peterson's claim to be the Chief Justice of its Tribal Court.

       Having reviewed the arguments and the record de novo, without deference to Judge Cousins, this Court finds that Peterson has not met his burden to establish by clear and convincing evidence that if released he would not pose a danger to other persons or to the community.

*Flight Risk*

       In light of the Court's conclusion that Peterson has failed to meet his burden on the issue of danger to other persons or the community, the Court need not reach the issue of flight risk.

However, for the sake of completeness the Court evaluates Peterson's showing that he would not be a flight risk if released.

Peterson argues that "[t]he Government has not provided any specific indications of risk to flight." Mot. at 5, ECF 20. As noted above, the Government does not have the burden here. Peterson has the burden to make an affirmative showing, by clear and convincing evidence, that he would not be a flight risk if released. Peterson has not offered any evidence or argument sufficient to make the required showing.

At the hearing, Peterson's Probation Officer advised that Peterson has not complied with his obligations to provide Probation with information about his finances, his change in residence, and his change in employment. The Probation Officer also indicated that he has no idea what income Peterson has, where the income comes from, or how Peterson pays rent at his current residence. The Probation Officer found these gaps in the information Peterson has provided to be concerning, especially given Peterson's prior conviction for fraud crimes and his outstanding obligation to pay more than $200,000 in restitution. Peterson's only response to the Probation Officer's information was to argue that it was not relevant.

Having reviewed the arguments and the record de novo, without deference to Judge Cousins, this Court finds that Peterson has not met his burden to establish by clear and convincing evidence that if released he would not pose a risk of flight.

*Conclusion*

Because Peterson has not met his burden to establish by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released, his motion to revoke Judge Cousins' detention order is DENIED. *See United States v. McCurin*, No. 20-10134, 2020 WL 3866885, at *1 (9th Cir. May 11, 2020) (affirming district court's denial of appellant's motion to revoke a detention order where "appellant has not shown, by clear and convincing evidence, that appellant is not likely to pose a danger to the safety of any other person or the community if released").

//

//

**IV. ORDER**

    (1)    Defendant Peterson's motion to revoke Judge Cousins' detention order is DENIED.

    (2)    This order terminates ECF 20.

Dated: November 18, 2022

_____
BETH LABSON FREEMAN
United States District Judge